297 So.2d 439 (1974)
Robert PRATHER, Plaintiff-Appellant,
v.
Larry GAUTREAUX, Defendant-Appellee.
No. 4608.
Court of Appeal of Louisiana, Third Circuit.
June 28, 1974.
Rehearing Denied July 26, 1974.
*440 Dubuisson, Brinkhaus, Guglielmo & Dauzat, by Edward B. Dubuisson, Opelousas, J. Michael Morrow, Eunice, for plaintiff-appellant.
Pucheu & Pucheu by Jacque B. Pucheu, Jr., Eunice, for defendant-appellee.
Before HOOD, CULPEPPER, and MILLER, JJ.
HOOD, Judge.
This is an action for damages sustained by plaintiff, Robert Prather, as the result of a motor vehicle collision. The defendant, Larry Gautreaux, denies liability, and he has reconvened for damages sustained by him as a result of the accident. The trial court rendered judgment in favor of defendant, rejecting Prather's demands and awarding Gautreaux the amount claimed by him in his reconventional demand. Prather has appealed.
The issues presented, stated generally, are whether the accident resulted from the negligence of plaintiff or from the negligence of defendant, or whether both of said parties were at fault barring either from recovering.
The collision occurred about 5:00 P. M. on July 25, 1973, on Laurel Avenue in the City of Eunice, Louisiana. It was raining at that time, but it was daylight and visibility was good except to the extent that it was restricted by the rain. Laurel Avenue is a four-lane thoroughfare, running east and west, the two lanes in the south half of that avenue being reserved for traffic traveling east, and the two lanes in the north half being reserved for west-bound traffic.
Shortly before the collision involved here took place, another accident occurred at the intersection of Laurel Avenue and Eighth Street, blocking traffic at that crossing and preventing vehicles traveling east and west from going through that intersection. A traffic jam developed, and by the time the collision involving plaintiff's automobile occurred, both of the west-bound lanes of traffic on Laurel Avenue had been lined with vehicles, parked almost bumper to bumper, for a distance of at least two blocks east of the Laurel Avenue-Eighth Street intersection. The two east-bound lanes of traffic on Laurel Avenue were open, with little, if any, traffic on them.
Prather's west-bound automobile was involved in the above mentioned traffic jam. His car was stopped in the southernmost west-bound lane of traffic, that being the lane of traffic nearest the center line of Laurel Avenue. While stopped in that position, the front of his car was approximately 40 feet east of the intersection of Laurel Avenue and Seventh Street, the last mentioned crossing being one block east of the intersection which was blocked and was causing the traffic jam.
After Prather had been parked in that position for a little while, he decided to turn to his left, to cross the center line of Laurel Avenue, and then proceed west in one of the east-bound lanes of traffic for a distance of about 40 feet until he reached Seventh Street, where he could turn to his left and thus get out of the traffic jam. Immediately after Prather turned to his left and the front part of his car had crossed the center line of Laurel Avenue, the left side of his car was struck by a *441 Dodge wrecker truck which was owned and was being driven by defendant Gautreaux. Prather instituted this suit to recover the damages sustained by him as a result of that accident.
Gautreaux owned and operated his wrecker as a business. Shortly before the collision involved here occurred, the Eunice City Police dispatched Gautreaux and his wrecker to the intersection of Laurel Avenue and Eighth Street, so that he could assist in moving the wrecked vehicles and relieving the traffic jam at that crossing. The police instructed him to "get there as soon as possible and clear the road." Gautreaux's wrecker was several blocks east of the blocked intersection when he received those instructions. He entered Laurel Avenue at a point five blocks east of Eighth Street, and then proceeded to drive west along that avenue at a speed of approximately 35 miles per hour. When he reached the intersection of Laurel Avenue and Sixth Street, he found that both of the west-bound lanes of traffic on that avenue were blocked from that point to Eighth Street by automobiles involved in the traffic jam. He noted, however, that the east-bound lanes of that avenue were open. He thereupon caused his wrecker to enter one of the east-bound lanes of traffic, and he proceeded west on one of the east-bound lanes toward the blocked intersection. He reduced the speed of his wrecker to about 20 or 25 miles an hour after he had crossed Sixth Street.
Gautreaux's wrecker was equipped with a beacon light of the type used on police cars, with four-way emergency flasher lights, with extra lights on the top of the truck, and with headlights. All of these lights were flashing or burning as he traveled west on Laurel Avenue to the site of the first accident. His wrecker was not equipped with a siren, and he did not blow his horn.
Prather testified that he turned on his directional light signals indicating his intent to make a left turn before he crossed the center line of Laurel Avenue, and that he did not see the Gautreaux wrecker approaching before the collision occurred. Gautreaux testified that the Prather car "jumped out in front of me and I hit him," that he was ten or twelve feet from Prather when he first saw his car move, that he did not see any signal given by plaintiff before the accident occurred, and that he was unable to avoid the collision.
The trial judge found that Prather was negligent in suddenly pulling into the east-bound lane of traffic before he reached the intersection. He also found that Gautreaux had been dispatched as an emergency vehicle on an emergency call, that the only route open to him to get to the site of the accident was the route which he was using, and that he had a right to travel in that lane of traffic. He concluded that Gautreaux was free from negligence under either the emergency vehicle doctrine or the "rescurer" doctrine.
Plaintiff contends, primarily, that the trial judge erred in finding that he was negligent. He argues that he was free from negligence in crossing the center line of Laurel Avenue, because he did so for the purpose of making a turn, as authorized by LSA-R.S. 32:82 subd. B.
While there is no doubt that plaintiff intended to turn to his left when he reached Seventh Street, his purpose in crossing the center line immediately before the accident occurred was to enter the east-bound lane of traffic, travel west in that lane for a distance of 40 feet until he reached the next intersection, and then turn to his left. We agree with the trial judge that plaintiff was negligent in turning to his left and crossing the center line of Laurel Avenue, without first determining that such a maneuver could be made safely.
We turn now to the question of whether Gautreaux also was negligent. LSA-R.S. 32:24 provides, in part, that the driver of an authorized emergency vehicle may disregard regulations governing the *442 direction of movement or turning in specified directions. Paragraph "C" of that section provides:
"C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible and visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle."
Plaintiff contends that the exceptions granted to an authorized emergency vehicle under LSA-R.S. 32:24 do not apply to Gautreaux, because the latter was not making use of audible, as well as visual, signals as he traveled west in the east-bound lane of traffic. He argues that LSA-R.S. 32:24, subd. C. requires that both audible and visual signals be given in order for a vehicle to be subject to the above exceptions, and that Gautreaux was using only visual signals at the time the accident occurred.
The evidence establishes that the Gautreaux wrecker was dispatched as an emergency vehicle to the scene of an accident, and that the only way he could reach the site of the accident was by traveling west in the east-bound lane of traffic on Laurel Avenue. Under those circumstances, he was authorized by LSA-R.S. 32:24 to disregard regulations governing the direction of movement on that avenue, provided that he observed the provisions of Paragraphs "C" and "D" of that section.
LSA-R.S. 32:24, subd. C provides that the exceptions granted in that section to an authorized emergency vehicle shall apply only when such vehicle is making use of audible and visual signals "sufficient to warn motorists of their approach." Although the statute uses the words "audible and visual," we think the clear intent of the law makers was to require signals which would be "sufficient" to warn motorists of their approach. We do not believe that they intended to impose a rigid requirement that both audible and visual signals be given at all times, even when it would be ridiculous to require one or the other. We think, for instance, that the exception provided in Paragraph "C" would apply to an emergency vehicle, even though the driver neglected to give an audible signal to an unoccupied car or to an inanimate object, or if he failed to sound his horn as he met another motorist approaching from the opposite direction. In our opinion, the test to be applied is whether the signals, audible, visual or both, were sufficient to warn motorists of the approach of the emergency vehicle.
We do not consider the case of Cotten v. Transamerica Insurance Co., 211 So.2d 110 (La.App. 1 Cir. 1968), relied on by plaintiff, as expressing a different view. The test applied by the court in that case was simply whether the signals given by the police car were sufficient to warn motorists of the approach of that vehicle, and it indicated that an audible signal alone may have been sufficient. The court said for instance, that:
"In view of the applicable statute, to exonerate a police vehicle from negligence in proceeding against an unfavorable traffic signal or light, three conditions must be fulfilled.... Thirdly, it must be utilizing at least an audible signal sufficient to warn and alert motorists of its approach."
* * * * * *
"What constitutes compliance with the statutory requirement that the signal must be `sufficient to warn motorists' is, of course, a factual issue to be determined in the light of the circumstances of each particular case."
In the instant suit, we think the beacon light, the four-way emergency flasher lights, and the headlights which Gautreaux was burning when the collision occurred were sufficient to warn Prather of the wrecker's approach. We agree with *443 the trial judge, therefore, that Gautreaux's wrecker was an "authorized emergency vehicle," as that term is used in LSA-R.S. 32:24, that the exception provided in Paragraph "C" of that section applied to the driver of that vehicle, and that Gautreaux was free from negligence.
In view of our conclusion that Gautreaux was free from negligence under the so-called "authorized emergency vehicle" doctrine, it is unnecessary for us to consider the argument that he also was free from negligence under the "rescuer" doctrine. See Chastain v. Allstate Insurance Co., 212 So.2d 243 (La.App. 2 Cir. 1968).
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.
MILLER, J., dissents and assigns written reasons.
MILLER, Judge (dissenting).
I agree that plaintiff Prather was negligent for making a left turn without first looking for overtaking traffic, but respectfully dissent from the finding that LSA-R.S. 32:24(C) can be read so that the word "and" means "or."
To allow Gautreaux to recover the trial court and the majority have held that the LSA-R.S. 32:24 exceptions granted to authorized emergency vehicles can apply when only visual signals are given. The statute requires "audible and visual signals." Had Gautreaux sounded the required audible signals, it would be reasonable to expect Prather's attention to have been directed to the overtaking emergency vehicle. Gautreaux's negligence in failing to comply with R.S. 32:24(C) was therefore a legal cause of the accident and this negligence bars his recovery.
I respectfully dissent as to the finding that Gautreaux was not negligent.